NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0531n.06

No. 12-5566

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
*May 29, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| CHRISTOPHER OSTEEN, | ) | THE WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| Defendant/Appellant. | ) | |
| | ) | |

Before: BATCHELDER, Chief Judge, MERRITT and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Christopher Osteen robbed the Old Country Store in Jackson, Tennessee, setting off the store's intrusion alarm in the process. Police officers responded and saw Osteen flee the store on foot. Osteen was carrying a 9mm pistol, but none of the officers knew that. Three officers gave chase and threw a flashlight at Osteen's feet, causing him to lose his balance. The officers tackled Osteen and tried to handcuff him, but he resisted, keeping his hands pinned beneath his torso. During the struggle, Osteen's pistol fired. The bullet struck Officer Mark Headen in the left forearm—shattering his radius bone and causing nerve and arterial damage in his arm—and then lodged in Headen's backup pistol, which was holstered on his chest. Eventually the other officers wrestled the gun from Osteen and handcuffed him. Headen later underwent multiple surgeries, including a bone graph and insertion of a steel plate with six screws to reconstruct his radius bone. Headen also required a tendon transfer to recover partial use of his left thumb.

Osteen was already a convicted felon at the time of this incident, so federal prosecutors charged him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Osteen pled guilty to the charge. At his sentencing hearing, the district court enhanced Osteen's offense level under U.S.S.G. § 3A1.2(c)(1)—known as the official-victim enhancement—for assaulting a police officer in a manner that created a substantial risk of serious bodily injury. That enhancement produced a guidelines range of 84 to 105 months. The government also requested that the court depart upward under U.S.S.G. § 5K2.2, given the severity of Headen's injuries. The district court did so and sentenced Osteen to 115 months' imprisonment.

We review Osteen's sentence for an abuse of discretion. *United States v. Castilla-Lugo*, 699 F.3d 454, 459 (6th Cir. 2012). Osteen's principal argument is that, in determining his sentence, the district court "double counted" the Headen shooting when the court enhanced Osteen's offense level under § 3A1.2(c)(1) and also departed upward under § 5K2.2. "Impermissible double counting" occurs when not merely the same conduct, but the same *aspect* of the same conduct factors into a defendant's sentence in two separate ways. *See United States v. Levy*, 250 F.3d 1015, 1017 (6th Cir. 2001).

We look to the text of the relevant guidelines to determine whether the district court double counted. Section 3A1.2(c)(1) provides for a six-level enhancement "[i]f, in a manner creating a substantial *risk* for bodily injury, the defendant . . . knowing or having reasonable cause to know that a person was a law enforcement officer, assaulted such officer during the course of the offense or immediate flight therefrom." (Emphasis added.) Section 5K2.2, in turn, provides that "[i]f significant physical injury resulted, the court may increase the sentence above the authorized

guideline range. The extent of the increase ordinarily should depend on the extent of the injury." Thus, by their terms, these sections consider different aspects of the defendant's conduct: § 3A1.2(c)(1) looks to the risk created by the conduct, while § 5K2.2 looks to the result.

But Osteen points out that comment 4(B) to § 3A1.2(c)(1) defines "substantial risk of bodily injury" to "include[,]" among other things, "actual serious bodily injury[.]" Thus, when read in light of the definition, "substantial risk" under § 3A1.2(c)(1) can mean "actual serious bodily injury"—which means that a district court potentially could apply § 3A1.2(c)(1) based upon the result of the defendant's conduct, rather than on the risk it causes.

It is clear from the record here, however, that the district court based its application of § 3A1.2 on the risk of Osteen's conduct. Osteen never cited comment 4(B) to the district court, and indeed his counsel stated during the sentencing hearing that § 3A1.2 "doesn't speak to actual injury, it speaks to, apparently, risk[.]" Tr. 40. Meanwhile, the court spoke only in terms of "substantial risk" in explaining its decision to apply § 3A1.2, *see* Tr. 45, 48; whereas in applying § 5K2.2 the court cited "the degree of injury that the officer sustained[,]" Tr. at 54; *see also* Tr. at 51. Based upon the record in this case, therefore, we conclude that the district court meant "risk" (rather than injury) when it cited the "risk" created by Osteen's conduct as the basis for the enhancement under § 3A1.2. Thus there was no double counting when the court applied § 5K2.2 based upon Headen's injuries.

Osteen otherwise argues that his sentence is substantively unreasonable. Suffice it to say that, given the extremely serious injuries suffered by Officer Headen, we disagree.

The district court's judgment is affirmed.